**BRITTANY L. SHERRON**
California State Bar No. 333762
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Brittany_Sherron@fd.org

Attorneys for Mr. Johnson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAMES DAVID JOHNSON,<br>Defendant. | CASE NO.: 25-CR-0076-BAS<br><br>Hon. Cynthia A. Bashant<br>Date: September 11, 2026<br>Time: 10:00 a.m.<br><br>**MR. JOHNSON'S SENTENCING MEMORANDUM** |

## I. Introduction

Mr. Johnson appears before this Court at 58 years old for his first conviction. Prior to this offense, Mr. Johnson had not had so much as a speeding ticket. By all accounts, his conduct in this case was shocking and his family and friends are still having trouble reconciling who they know Mr. Johnson to be with what they have learned about his activities online.

While the offense conduct detailed by the government and in the PSR is nothing short of disturbing, Mr. Johnson simply asks that this Court take his case in context of who he has been for the majority of his life as well as compared to the other cases who have been sentenced in this district over the last ten years. After considering Mr. Johnson's personal history and characteristics, as well as the average sentence imposed in this district for similar offenses, Mr. Johnson respectfully requests this Court impose a sentence of 84 months in custody.

## II. Factual Clarifications to the PSR

Paragraph 59: Mr. Johnson's father was a civilian employee of the U.S. Navy and he is fully retired now (from both occupations).

Paragraph 61: Mr. Johnson enlisted in the military when he was still in Santee, California. He then was stationed at Tustin Helicopter Base (U.S.M.C.) until he was sent to Japan. He finished his service while he was still stationed in Japan. It was then that he lived in Los Angeles with his wife for a short time before moving to New York.

Paragraph 93: Mr. Johnson never used any mobile phone applications.

## III. Individual Before the Court: James "J.D." Johnson

With the exception of the factual clarifications outlined above, Mr. Johnson has no objection to the "Offender Characteristics" section of the PSR, ¶¶58-83. Mr. Johnson also participated in a mitigation investigation, led by Mary Fishel at the Federal Defenders office. Ms. Fishel wrote an extensive letter to the Court outlining the information she learned about Mr. Johnson's personal history by interviewing him, his family and friends, as well as reviewing extensive records. *See* Exhibit A.

[redacted]

## IV. The Sentencing Guidelines Range

Mr. Johnson pleaded guilty pursuant to a plea agreement with the United States. The parties and the PSR agree on the initial Guideline calculations; however, Mr. Johnson negotiated an additional two-level variance to account for his full

appellate waiver and expeditious resolution of this case which is not reflected in the probation department's final guideline calculations. Mr. Johnson further requests an additional downward variance for a combination of circumstances, as outlined below and pursuant to §3553(a) and *Kimbrough v. United States*, 552 U.S. 85 (2007).

**A. Motion for a downward departure or variance for a combination of circumstances**.

Mr. Johnson requests a downward departure for a combination of circumstances pursuant to § 3553(a). The basis for the departure is Mr. Johnson's lack of any criminal history or substance abuse problems, his honorable military service, strong family support, and stable work history. Mr. Johnson further asks the Court to consider that given the nature of his conviction he faces a greater risk of being assaulted by other inmates while in prison and will likely have to spend his sentence in protective custody. He will also be stigmatized as a sex offender for the rest of his life, which will make it exceedingly difficult for him to secure future employment following his release from custody.

**B. Motion for a variance pursuant to *Kimbrough v. United States*.**

Mr. Johnson also asks the Court to exercise the discretion accorded to it in *Kimbrough v. United States* to vary from the Sentencing Guidelines based on policy disagreements with them. *See United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011) (recognizing a district court's discretion to vary from U.S.S.G. § 2G2.2 based on its policy disagreement with that guideline). U.S.S.G. § 2G2.2 is "fundamentally different" from most Guidelines. *See United States v. Dorvee*, 616 F.3d 174, 184 (2nd Cir. 2010). As the Second Circuit noted in *Dorvee*:

> Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. However, the Commission did not use this empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing

> Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties.

*See id*. at 184. The Second Circuit also recognized that:

> The § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases . . . On top of that, many of the § 2G2.2 enhancements apply in nearly all cases.[1]

*See id*. at 186. The court also found that:

> [Section] 2G2.2 eviscerates the fundamental statutory requirement in § 3553(a) that district courts consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and violates the principle, reinforced in *Gall*, that courts must guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct.

*See id*. at 187. For example, the court noted that a possessor of child pornography, with no prior criminal history, faces the same Guidelines range as a defendant with prior criminal history "who has been convicted of an aggravated assault with a firearm that resulted in bodily injury." *See id*. Thus, section 2G2.2 "can lead to unreasonable sentences that are inconsistent with what § 3553 requires." *See id*. at 184; *see also Henderson*, 649 F.3d at 965 (concurring opinion of J. Berzon) (agreeing with *Dorvee*). As a result, the Sentencing Commission has noted that "sentencing courts have . . . expressed comment on the perceived severity of the

[1] For example, in fiscal year 2022, the enhancement for possessing material of a "victim under the age of 12" applied in 94.4% of cases. The enhancement for possessing "600 or more images" applied in 73.3% of cases. The enhancement for possessing images that depict "sadistic or masochistic conduct" applied in 53.3% of cases. *See* United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics (Guideline Calculation-Based) for Fiscal Year 2019*, at 44-45, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2022/Ch2_Offender_FY22.pdf (last visited June 11, 2024).

child pornography Guidelines through increased below-guidelines variance and downward departure rates." *See Henderson*, 649 F.3d at 962 (citations omitted).

Indeed, judges in the Southern District of California generally apply significant variances in cases which apply U.S.S.G. §2G2.2 as the primary guideline. The following graphs are pulled from the Sentencing Commission's Interactive Data Analyzer, available at: ida.ussc.gov/analytics. The graphs were made by filtering for all cases in the Southern District of California for "Child Pornography" since 2015 where the offender was in Criminal History Category I.






In sum, section 2G2.2 often produces substantively unreasonable Guideline ranges. *See, e.g., Dorvee*, 616 F.3d at 188 (holding that the guideline range recommended by § 2G2.2 was substantively unreasonable). Mr. Johnson asks the Court to exercise its discretion under *Kimbrough* and find that § 2G2.2 produces an unreasonably high Guideline range in his case as well.

## V. The Need for the Sentence Imposed

There is no doubt that Mr. Johnson's online activity was disturbing. And in no way does Mr. Johnson intend to minimize the offense conduct by requesting a variant sentence. Rather, in recognition of the aggravating facts before the Court, Mr. Johnson is requesting a sentence higher than the average sentence imposed on a zero-point offender with a similar case in this district.

While the offense conduct was aggravated, everything else about Mr.

Johnson is mitigated. He has a strong work history and ethic of volunteerism. He has always volunteered his time to help others, whether that be through his church activities or helping elderly folks with house maintenance for a fraction of the cost they would normally be charged. *See* Exhibit B, letters of support. Mr. Johnson also served in the U.S. Marine Corps and was honorably discharged from service. There is no indication from his background that he would be involved in this type of offense.

While Mr. Johnson's background is perhaps perplexing given the offense conduct, his conduct is likely best explained by a genuine mental illness that needs to be addressed in treatment. As this Court is well aware, Mr. Johnson will not have an opportunity to engage in any type of psychiatric or mental health treatment while in custody. The custodial sentence serves no other end than to punish and remove him from society. However, as addressed by Dr. Jajko, Mr. Johnson is a candidate for intervention and need not spend the rest of his life in custody[2].

Lastly, the requested sentence would not create a sentencing disparity. As discussed above, courts in this district generally impose sentences far below the guidelines range, with an average sentence of 62 months imposed in the last 11 years. The 84-month recommendation takes into account the fact that the content Mr. Johnson was viewing and his overall activities online were worse than average. Therefore, the requested sentence would be sufficient but not greater than necessary and would serve the goals of sentencing.

## VI. CONCLUSION

For all of these reasons, a variant sentence is appropriate here. If given the opportunity, Mr. Johnson will take full advantage of the services and opportunities provided to him through U.S. Probation and is willing to commit to treatment. He

[2] This statement is not meant to invoke hyperbole. Given Mr. Johnson's age, if the Court adopts the government's recommendation, Mr. Johnson would not be released from custody until he is in his early 70s and he would not finish Supervised Release until his mid-90s.

respectfully requests this Court impose a sentence of 84 months with 10 years of Supervised Release to follow.

Respectfully submitted,

Dated: September 7, 2026

*s/ Brittany L. Sherron*

Federal Defenders of San Diego, Inc.
Attorneys for Mr. Johnson
Email: Brittany_Sherron@fd.org