# EXHIBIT A

FEDERAL DEFENDERS OF SAN DIEGO, INC.
THE COMMUNITY DEFENDER ORGANIZATION FOR THE SOUTHERN DISTRICT OF CALIFORNIA

September 3, 2026

Honorable Cynthia Bashant
United States District Court Judge
Southern District of California
333 West Broadway, Courtroom 12B
San Diego, California 92101

Re: United States v. James David Johnson, 25-CR-0076

Dear Judge Bashant,

Mr. Johnson's life reflects longstanding stability across multiple areas of functioning prior to the current legal matter. Throughout his life, he maintained employment and remained meaningfully connected to his community, including regular involvement in church activities and community service. In addition, he served in the military, an experience that further shaped his sense of discipline, structure, and duty. He is supported by a close and engaged family network that continues to stand by him during these proceedings, providing both emotional support and stability. Taken together, these factors reflect a long-standing pattern of prosocial behavior and strong community ties.

Notably, in his early twenties, Mr. Johnson was involved in a serious motor vehicle accident that resulted in loss of consciousness, a concussion, and subsequent neurological symptoms. This incident represents a significant point in his life history and warrants careful consideration when evaluating his functioning over time.

Aside from this event, Mr. Johnson's life has largely been marked by stability, ongoing employment, and continued connection to family and community. These factors highlight both his capacity for structure and his potential for continued positive adjustment.

The following information is based on a combination of multiple interviews with Mr. Johnson in addition to interviews with his sister Sandee, brother Brian, brother-in-law Bill, niece Clarissa, nephew Jack, friend Jeff, and ex-wife Kathy. Additionally, I was able to review medical records from his service in the military. These multiple sources were used to ensure a balanced and comprehensive understanding of the client's background and life circumstances.

**Current Status**

Mr. Johnson is currently incarcerated at the Metropolitan Correctional Center in San Diego. He has the continued support of his family including his sister Sandee, brother Brian, and brother-in-law Bill, who visit him and provide financial support. While incarcerated, Mr. Johnson is using his time to work on himself including engaging in an 8-week morals class with Dr. Griswold, attending church services every Sunday, and leading Bible studies and prayer time on his floor. He indicated that he has included Spanish-speaking inmates in his Bible studies by providing a Spanish Bible and English Spanish dictionary to communicate. Additionally, Mr.

Johnson is willing to engage in any treatment available and applicable to him during his incarceration.

**<u>Positive Supports</u>**

Mr. Johnson was born and raised in the San Diego area. He described a loving and supportive family with an overall positive upbringing. He was raised by his mother, Loretta, and father, James, who had an excellent relationship. He denied that there was ever any domestic violence in the home, noting that at times they had arguments but nothing that escalated into anything concerning. His mother retired from her career as a dental assistant to stay at home with the children while his father worked. Mr. Johnson is the oldest of three. His brother, Brian, is four years younger than him, and his sister, Sandee, is one year younger than him. They were raised in a house in Santee where Mr. Johnson shared a bedroom with his brother, Brian. The children all had their basic needs met. They resided in a safe area and were friends with many of their neighbors. Their parents had typical rules for the children such as getting home before it got dark outside and always letting their parents know where they were going. Additionally, they were only allowed to watch television for a short period in the evening in their parent's room. Punishment in the home included yelling and spanking but nothing that Mr. Johnson considered abusive. He denied that there was any type of physical, verbal, or sexual abuse in the home and denied that anyone in the home used substances.



*Figure 1 Mr. Johnson's family*

Mr. Johnson described that his family is deeply religious and have all been involved in their church since he was a child. His father was a worship leader, and his mother led the children's groups. He recalls spending a lot of time with his church friends, going on outings and camping trips with them. He enjoyed his time in the church but noted that his family was a lot more strict than other families, so he was not allowed to do as many activities as his friends. His sister and brother-in-law are still very involved in the same church as when they were children. Mr. Johnson was very involved in church as an adult as well, leading services and Bible studies, and volunteering his time to assist where needed.

Mr. Johnson is still very close with his family, and prior to his incarceration, he was doing monthly sibling lunches with them, weekly movie nights with his brother, and holiday get togethers. Additionally, most of his family lives in Santee including his niece, Clarissa, who lives on his street. Clarissa recalled that she and her brother Jack looked up to Mr. Johnson when they were children, and they thought he was cool and thoughtful. He spent a lot of time with them at church and at their house and often played games with them. His sister and brother-in-law have

already committed to finding him housing and helping to support him upon his release from custody.

Those who know Mr. Johnson struggle to reconcile this conduct with the person they have known over many years. That tension does not minimize the seriousness of the offense conduct. It does, however, raise important questions regarding whether the behavior reflects a fixed pattern of behavior or a deeply harmful but situational deviation within an otherwise stable life trajectory.



*Figure 2 Mr. Johnson with family*

## Education and Employment

Mr. Johnson earned his high school diploma from Grossmont High School in La Mesa in 1986. He was part of the choir in both school and church. He disclosed that he experienced some bullying by his peers because he had to wear braces with an external piece. He specifically recalled other students hitting him in the mouth. Otherwise, he reported no other bullying. He also noted that while he was in school, teachers still punished children by hitting them which made him more fearful of male teachers.

Mr. Johnson stated he has taken some college courses including online courses in psychology. His family described him as very intelligent and always engaged in debates with others, eager to share his viewpoints with his family.



United States Marine Corps

Certificate of Good Conduct

Having conducted yourself in a creditable manner, you are, by direction of the Commandant of the Marine Corps, awarded a Good Conduct Medal FIRST AWARD for the period to

Your conduct during this period denotes honest and faithful service in keeping with the highest traditions of the Marine Corps.

Lieutenant Colonel

6 APRIL 1990

*Figure 3 USMC Certificate*

After high school, Mr. Johnson joined the Marine Corps from 1987 to 1991 when he was honorably discharged. He stated he joined the military because he liked and needed structure. He worked at a helicopter base in Tustin for three years as military police. While there he did patrols, secured the gated areas, and escorted those needing security. Overall he enjoyed his time in the military, but he indicated that military police seemed like an afterthought on base which was discouraging at times. After Tustin, he spent a little over a year in

Okinawa, Japan as an instructor at the first military police school. He was then briefly stationed at Camp Pendleton before leaving the military.

While living in New York with his wife, Mr. Johnson worked as a high-risk security officer, providing security at homeless shelters throughout the night in more dangerous areas of the city.

After returning to California, he became interested in electrician work when introduced to an apprenticeship position by a friend from church. He later completed a ROTC electrical program and began running job sites. He continued to earn certifications in this field to give him the expertise needed to work in certain specialized areas such as gas work.

Mr. Johnson has also volunteered a significant amount of time at the Creation Museum in Santee because of his interest in natural sciences. He volunteered leading tours and assisting with fundraising. There, he met his colleague and friend, Jeff, who provided a letter of support.

**Loss in Mr. Johnson's Life**

Mr. Johnson described one particularly difficult period in his life during which he experienced multiple losses in rapid succession. For thirteen years, he was married to a woman named Kathy who he met on the military base in Tustin. Kathy worked as an assistant manager, and as military police, his job was to escort her to the bank. While married to Kathy, they moved all around the United States to be near her family before finally settling in West Virginia with Kathy's brother. He described that he and Kathy had different religious beliefs which led to contention in their marriage. They divorced about 25 years ago, and he has no contact with her. Mr. Johnson stated that he has no children. Kathy described Mr. Johnson as a "good guy", very quiet, and reserved. She stated he never used any substances or alcohol while they were together, and he was never abusive in any way. She never had any concerns about him, noting that they rarely even argued. However, she felt like his lack of motivation and communication ultimately led to their divorce.

Mr. Johnson disclosed that his mother passed away 25 years ago after battling pancreatic cancer. He and his family members noted that this was a very difficult time for him. While Mr. Johnson was home in San Diego for the funeral, Kathy filed for divorce. During the day of the funeral, Mr. Johnson's dog passed away. The combination of these traumatic events in a short period was undoubtedly difficult for Mr. Johnson to process. His family supported him through this time, and he moved home into his father's house in Santee where he continued to reside until his arrest.

**Mr. Johnson's Motor Vehicle Accident**

On December 9, 1989, Mr. Johnson was in a serious motor vehicle accident in Long Beach, California during which he totaled his vehicle and lost consciousness. Mr. Johnson stated he has no memory of the event but remembers waking up in the hospital. Records indicate that it took 45 minutes to extricate Mr. Johnson from the car, and he spent three days in the hospital. During the accident, he suffered from a nasal fracture, sternal bruising, right temporal and

nasolabial lacerations, and a concussion. He was referred to a neurologist after experiencing ongoing symptoms including decreased attention span, dizziness, lightheadedness, headaches, and decreased cognitive function. He was diagnosed with post-concussion syndrome and cerebral contusion and was placed on leave from the military for 30 days with directions to engage in outpatient medical treatment weekly to monitor his symptoms. According to the research through the National Institute of Health, "post concussive syndrome (PCS) describes the symptoms that occur after a brain injury and can include headache, fatigue, vision changes, insomnia, and difficulty concentrating." It also notes that the symptoms must persist for longer than three weeks as most patients recover in the first 7 to 10 days following a mild injury.[1] On February 8, 1990, he was reassessed by the internal medicine department at Naval Hospital Long Beach. He reported that his headaches were starting to resolve. At that time, he was diagnosed with post-traumatic syndrome.

Mr. Johnson indicated that he does not experience any ongoing symptoms from his accident despite sustaining a brain injury which affected his cognitive function and required ongoing medical care. Research indicates that traumatic brain injury (TBI) is highly prevalent in prison populations and a substantial portion of them are caused by motor vehicle accidents and assaults. Additionally, TBI due to motor vehicle accident and assault correlates with increased psychological symptoms compared to TBI due to falls, suggesting that the two most frequent mechanisms of TBI in the incarcerated population relate to worse psychological outcomes.[2]

While there is no clear documentation of ongoing neurological impairment, the extent to which this injury may have had lasting or subtle impact on cognitive or behavioral functioning has not been formally evaluated. Mr. Johnson was treated for a couple of months for ongoing symptoms but discontinued treatment after a self-report of resolving symptoms. Given that even mild TBI can, in some cases, be associated with changes in areas such as impulse control, attention, and judgment, this history is relevant to a comprehensive understanding of the client's background. Although no direct or causal relationship can be established between this injury and the instant offense, it remains an appropriate consideration in evaluating his overall functioning.

**Protective Factors**

Research regarding sexual offense recidivism demonstrates the importance of distinguishing between categories of offending behavior rather than treating all individuals convicted of sexual offenses as presenting identical levels or types of risk. Studies examining internet-based or digital offenses have noted meaningful differences between individuals engaged exclusively in online conduct and those with histories of direct contact offenses, particularly with respect to patterns of escalation and future hands-on offending. A study conducted in 2022 found that they were unable to demonstrate a causal link between pornography use and sexual offending, and that it would be very unlikely that pornography use

---

[1] Permenter CM, Fernández-de Thomas RJ, Sherman AL. Postconcussive Syndrome. [Updated 2023 Aug 28]. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; 2026 Jan

[2] Schneider BS, Arciniegas DB, Harenski C, Clarke GJB, Kiehl KA, Koenigs M. The prevalence, characteristics, and psychiatric correlates of traumatic brain injury in incarcerated individuals: an examination in two independent samples. Brain Inj. 2021 Dec 6;35(14):1690-1701. doi: 10.1080/02699052.2021.2013534. Epub 2022 Jan 22. PMID: 35067151; PMCID: PMC8884136.

by itself would lead to sexual offending.3 Research has suggested that "there is a distinct group whose only sexual crimes involve illegal (most often child) pornography. It is these offenders that rarely go on to commit sexual offenses.[4] A U.S. Probation report stated that "among the sex offense types, those offenders under supervision for SORNA or sexual assault were arrested or revoked at the highest rates, while those under supervision for child pornography offenses had lower recidivism rates."[5] In Mr. Johnson's case, there is no known history of hands-on sexual offending or prior criminal history suggesting a broader pattern of predatory conduct. While the offense conduct is serious and harmful, the available information does not indicate a longstanding history of criminality.

Research also reflects that sexual recidivism rates generally decline with age, with older individuals demonstrating lower rates of reoffending compared to younger populations.[6] People who are in their 60s and 70s may begin to shift their mindset due to a loss of physical health, lack of time, or decrease in overall testosterone.[7] In a study that compared the sexual recidivism rates in 4,724 sex offenders, only 12% of recidivists were over the age of 50.[6] At nearly 60 years old, Mr. Johnson already falls within an age group associated with lower recidivism risk. Given the significant custodial sentence he faces, he will return to the community at an even more advanced age, further reducing statistically recognized risk factors associated with future offending behavior.




*Figure 4: Offender ages at time of recidivism*

---

[3] Wescott, S., Kosmala, K. Current Perspectives on Pornography Use by Individuals Convicted of a Sexual Offense. *Curr Psychiatry Rep* **24**, 671–678 (2022). https://doi.org/10.1007/s11920-022-01374-9
[4] Seto, M. C., Karl Hanson, R., & Babchishin, K. M. (2011). Contact Sexual Offending by Men With Online Sexual Offenses. *Sexual Abuse*, *23*(1), 124–145. https://doi.org/10.1177/1079063210369013
[55] Thomas H. Cohen & Michelle C. Spidell, How Dangerous Are They? An Analysis of Sex Offenders Under Federal Post-Conviction Supervision, 80 Fed. Probation 21, 27 (September 2016)
[6] Nicholaichuk, Terry P., Mark E. Olver, Deqiang Gu, and Stephen C. P. Wong. "Age, Actuarial Risk, and Long-Term Recidivism in a National Sample of Sex Offenders." *Sexual Abuse* (Los Angeles, CA) 26, no. 5 (2014): 406–28. https://doi.org/10.1177/1079063213492340.
[7] Rice, M. E., & Harris, G. T. (2014). What Does It Mean When Age Is Related to Recidivism Among Sex Offenders? *Law and Human Behavior*, *38*(2), 151–161. https://doi.org/10.1037/lhb0000052

These age-related considerations exist alongside several additional protective factors present in Mr. Johnson's history, including the absence of prior criminal conduct, longstanding employment and community stability, military service, and the continued support of family members. Collectively, these factors are relevant when evaluating long-term risk and rehabilitation potential.

**Summary and Recommendations**

For the vast majority of Mr. Johnson's life, he has functioned as a stable, contributing member of his community. He has maintained steady employment, served his country honorably, remained engaged in his faith, and sustained meaningful family relationships that continue to support him. Additionally, he has no prior criminal history. He has experienced various hardships in his life including the death of his mother, the dissolution of his marriage, and a serious motor vehicle accident. Despite these hardships, he has never engaged in any mental health treatment but has expressed willingness to engage as part of his custodial sentence. Considering his otherwise law-abiding life, his established support system, and his rehabilitative potential, Mr. Johnson will benefit from a plan that emphasizes treatment, accountability, and reintegration into his community.

Thank you very much for your time and consideration.

Respectfully,

Mary Fishel

Mary Fishel, MA
Mitigation Specialist